**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KADIR AMIN MCCOY,                )
                                 )
                    Petitioner,  )
                                 )
        v.                       )   C.A. No.  25-25 (JLH)
                                 )
BRIAN EMIG, Warden, and          )
ATTORNEY GENERAL OF              )
THE STATE OF DELAWARE,           )
                                 )
                    Respondents. )

_____

Kadir Amin McCoy.  Pro se Petitioner.

Brian L. Arban, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware.  Attorney for Respondents.

_____

**<u>MEMORANDUM OPINION</u>**

March 24, 2026
Wilmington, Delaware



**Hall, District Judge:**

Petitioner Kadir Amin McCoy is an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware. Petitioner filed a "Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody" and a memorandum in support. (D.I. 1; D.I. 4.) Petitioner thereafter filed a Motion to Stay the Proceedings (D.I. 14), a document styled "Motion for Clarification," which the Court construes as a supplement (D.I. 15), a Motion to Amend (D.I. 16), and a Motion for an Evidentiary Hearing (D.I. 17). Respondents filed an Answer in which they assert, among other things, that the Petition is time-barred. (D.I. 18.) Petitioner filed a Reply and an additional Motion to Amend. (D.I. 21; D.I. 22.) For the reasons discussed below, the Court dismisses the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I. **BACKGROUND**

In 2015, Petitioner was indicted on "one count of gang participation; two counts of first-degree murder (alleging two separate intentional murders on two different dates); three counts of first-degree robbery; two counts of aggravated menacing; seven counts of possession of a firearm during the commission of a felony (PFDCF); two counts of first-degree conspiracy, one count of second-degree conspiracy, four counts of possession of a firearm by a person prohibited, four counts of possession of a handgun by a juvenile, one count of carrying a concealed deadly weapon, one count of wearing a disguise during a felony, and one count of resisting arrest." *See State v. McCoy*, No. 1501018069, 2025 WL 2159032, at *1 (Del. Super. Ct. July 30, 2025); *see also State v. McCoy*, No. 1501018069, 2020 WL 5821279, at *1 (Del. Super. Ct. Sept. 28, 2020). The 107-count indictment named Petitioner and thirteen codefendants. *See McCoy*, 2025 WL 2159032, at *1. The gang participation charge stemmed from Petitioner's membership in the Touch Money Gang (aka "TMG"). *See McCoy*, 2020 WL 5821279, at *1.

One of the first-degree murder counts was for the January 18, 2015 murder of Devon Lindsey, who was shot in the head after three suspects fired inside a minivan where the victim was a passenger. *See id.* The second first-degree murder count was for the January 24, 2015 murder of William "Billy" Rollins, who was found with eleven gunshot wounds on the left side of his body and his right temple. *See id.* Two projectiles recovered at the scene appeared to be fired by a .357 firearm and a search warrant executed at Petitioner's residence on February 3, 2015, uncovered a .357 Taurus firearm.[1] *See id.* One of the robbery charges stemmed from the January 29, 2015 robbery of WSFS Bank in Wilmington, Delaware, in which two masked suspects showed guns, demanded money, and seized approximately $15,000 in cash. *See id.* Officers responded to the crime scene as the suspects were fleeing and Petitioner was seen tossing a red backpack. *See id.* Inside the backpack was the stolen money and a 9mm Ruger P85, which was ballistically matched to fifteen 9mm shell casings found at the scene of the Rollins homicide. *See id.* After a brief foot chase, Petitioner and his coconspirator were arrested. *See id.*

On March 3, 2017, Petitioner pleaded guilty to two counts of second-degree murder (as lesser-included offenses of first-degree murder), two counts of PFDCF, two counts of first-degree conspiracy, one count of first-degree robbery, and one count of illegal gang participation. *See id.* Although Petitioner was potentially facing two life sentences and hundreds of years of prison time if convicted, the State agreed to cap its sentence recommendation to the mandatory-minimum period of 39 years of unsuspended Level V time. *See id.*

---

[1] Respondents submitted testimony from Petitioner's codefendant's trial stating that the .357-caliber Taurus firearm found at Petitioner's residence ballistically matched one of the projectiles from the Lindsey homicide. (D.I. 18 at 6 n.4 citing D.I. 18-1 at 2, 4, 9–11, 13, 17, 19.) This testimony provides additional evidence linking Petitioner to the crime, but the Court need not rely on it because Petitioner's state court record is sufficient for the Court to reach its decision.

Months later, on August 10, 2017, Petitioner moved to withdraw his guilty plea. The Delaware Superior Court denied the motion, finding that there was no procedural defect in taking the plea, that Petitioner knowingly and voluntarily consented to the plea agreement, that Petitioner had no basis to assert a claim of legal innocence, and that Petitioner had adequate legal counsel throughout the proceedings. *See State v. McCoy*, No. 1501018069, 2019 WL 3247174, at *2 (Del. Super. Ct. July 17, 2019). On August 18, 2017, the Superior Court sentenced Petitioner to the mandatory-minimum period of 39 years of unsuspended Level V time, followed by probation. *See id.* Petitioner did not file a direct appeal. *See id.*

On October 16, 2018, Petitioner filed his first motion for postconviction relief under Delaware Superior Court Rule 61 ("first Rule 61 Motion"). Petitioner's first Rule 61 Motion raised ineffective assistance of counsel ("IAC") claims and a claim of newly discovered evidence based on the State ballistics expert, Carl Rone, being arrested for "fraudulent and illegal activity." *Id.* Trial counsel filed an affidavit in response to the IAC claims. *Id.* The Delaware Superior Court denied Petitioner's first Rule 61 Motion because his claims were time-barred, otherwise procedurally barred, waived by his guilty plea, and without merit. *McCoy*, 2019 WL 3247174, at *1–6 (Report & Recommendation). (D.I. 19-1 at 16–17, Entry No. 84 (adopting Report & Recommendation); D.I. 19-12.) There is no indication in the record that Petitioner filed an appeal.

On July 20, 2020, Petitioner filed another Rule 61 Motion ("second Rule 61 Motion"). *McCoy*, 2020 WL 5821279, at *2. Petitioner alleged IAC for lack of communication before and after his plea. *Id.* He also alleged that he had newly discovered evidence stemming from a statement in the State's Response to Petitioner's first Rule 61 Motion that Petitioner was developed as a suspect to one of the murders through video surveillance footage (and Petitioner claimed there was no such footage). *See id.* The Delaware Superior Court summarily dismissed Petitioner's

3

second Rule 61 Motion on October 9, 2020, finding that Petitioner's new evidence claim did not allege, let alone establish, a strong inference of his actual innocence, especially in light of his guilty plea, and that the motion was time-barred and procedurally barred. *See id.* at *3. (D.I. 19-1 at 17, Entry. No. 89.) Petitioner appealed the dismissal of his second Rule 61 Motion, but the Delaware Supreme Court dismissed the appeal as untimely on April 7, 2022. *See McCoy v. State*, No. 402, 2020, 2021 WL 50406 (Del. Jan. 4, 2021).

Petitioner filed a third Rule 61 Motion on September 22, 2022, which was summarily denied as an impermissible successive motion. (D.I. 19-1 at 19, Entry. No. 97; D.I. 19-1 at 19, Entry. No. 101; D.I. 19-3 at 65.) On March 6, 2023, Petitioner filed a fourth Rule 61 Motion, which was summarily dismissed as successive, time-barred, and otherwise procedurally barred. (D.I. 19-1 at 19, Entry. No. 102; D.I. 19-1 at 22, Entry. No. 125; D.I. 19-3 at 64–65.) Petitioner did not appeal the dismissal of his third Rule 61 Motion, and the Delaware Supreme Court affirmed the dismissal of his fourth Rule 61 Motion. *McCoy v. State*, No. 419, 2023, 2024 WL 1270190 (Del. Mar. 25, 2024).

On May 6, 2025, Petitioner filed a Motion for Correction of Illegal Sentence under Delaware Superior Court Rule 35 based on *Erlinger v. United States*, 602 U.S. 821 (2024), in which the United States Supreme Court re-emphasized that "[v]irtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." *Id.* at 834 (cleaned up) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). (D.I. 19-1 at 23, Entry No. 131.) On July 30, 2025, the Superior Court denied the motion on the grounds that *Erlinger* was not applicable because Petitioner's sentence was not enhanced. *McCoy*, 2025 WL 2159032, at *2.

On December 31, 2024,[2] Petitioner filed the pending Petition.  (D.I. 1 at 15.)  Liberally construing the Petition and all of Petitioner's additional filings, Petitioner seeks relief on the following grounds:  (1) actual innocence (D.I. 1 at 5; D.I. 1-1 at 2–18; D.I. 4 at 25–27); (2) IAC for conduct both before and during the plea process[3] and for failing to file a direct appeal (D.I. 1 at 6, 7, 9, 10; D.I. 1-1 at 21; D.I. 4 at 9); (3) trial court bias and error for ignoring prejudicial issues and denying motions to remove counsel and withdraw guilty plea (D.I. 1 at 8; D.I. 1-1 at 19–21; D.I. 4 at 1–3, 21; D.I. 21 at 6); (4) prosecutorial misconduct for (a) stating Petitioner was identified as a suspect in the Lindsey homicide through surveillance footage, which Petitioner claims does not exist (D.I. 1 at 10; D.I. 1-1 at 2, 17, 21; D.I. 4 at 17; D.I. 21 at 16), (b) poorly investigating or fabricating evidence because, according to Petitioner, the ballistic and forensic evidence is inconsistent with the State's theory of the case (D.I. 1-1 at 4–16, 20), (c) knowingly using or encouraging a false witness statement and failing to correct it (D.I. 1-1 at 16–18, 20, 21; D.I. 4 at 13–17), and (d) committing a "*Brady*[4]/Discovery" violation based on Petitioner's limited access to case materials due to a protective order (D.I. 1-1 at 20; D.I. 17 at 2–3; D.I. 21 at 10, 13); and

---

[2] The docket indicates that the Petition was filed on January 7, 2025, but the Petition suggests that it was placed in the prison mailing system on December 31, 2024.  The prison mailbox rule provides that the date on which a pro se prisoner delivers documents to prison authorities for mailing is considered the filing date.  *See United States v. Brookins*, 132 F.4th 659, 663 n.2 (3d Cir. 2025) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

[3] These IAC claims allege counsel failed to:  (a) properly "communicate, inform and explain plea agreement" (D.I. 1 at 7; D.I. 1-1 at 19–20, 21; D.I. 4 at 7; D.I. 21 at 5–6); (b) investigate the case (D.I. 1-1 at 18, 21; D.I. 4 at 3, 7; D.I. 21 at 5, 12–14); (c) build a defense (D.I. 1-1 at 18; D.I. 4 at 3, 7; D.I. 21 at 4); (d) meet with Petitioner and discuss discovery materials and provide him with his case file (D.I. 1-1 at 18–19; D.I. 4 at 3, 5–7; D.I. 14; D.I. 17; D.I. 21 at 4, 5, 10–11, 13); (e) establish a working relationship (D.I. 4 at 3, 7; D.I. 21 at 4, 5); and (f) inform him of his right as a juvenile to a hearing under *Miller v. Alabama*, 567 U.S. 460 (2012), (D.I. 16 at 1-4).

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

(5) denial of his right to confront witnesses whose identities were not initially disclosed due to the protective order (D.I. 16 at 5).  Petitioner bases some of his claims on a witness recanting his statement implicating Petitioner in the Rollins homicide.  Petitioner submitted an affidavit from this witness in which he avers that he lied at the behest of prosecutors to avoid "life in prison alongside [Petitioner's codefendant] and the rest of the alleged touch money gang (TMG)" for robbery and weapons charges he faced.  (D.I. 22-1.)

## II.      <u>STATUTE OF LIMITATIONS</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year limitations period for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling. 28 U.S.C. § 2244(d)(2) (statutory tolling); *Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling).  A petitioner may also be excused from failing to comply with the limitations period by making a gateway showing of actual innocence.  *See Wallace v. Superintendent Mahanoy SCI*, 2 F.4th 133, 151 (3d Cir. 2021).  AEDPA's statute of limitations is applied on a claim-by-claim basis.

*Pace v. DiGuglielmo*, 544 U.S. 408, 415-16 (2005); *Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004).

A.      **Calculation of Petitioner's Deadline**

Petitioner has not raised any claims involving a right newly recognized by the United States Supreme Court and made retroactively applicable that would trigger the application of § 2244(d)(1)(C). The Court, therefore, will calculate Petitioner's deadline under § 2244(d)(1)(A) and, liberally construing his filings, analyze whether he has alleged any facts warranting the application of § 2244(d)(1)(B) or (D).

1.      **Petitioner's Deadline Under Section 2244(d)(1)(A)**

Under § 2244(d)(1)(A), Petitioner's one-year limitations period began to run when his "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the time period allowed for seeking direct review. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). In this case, the Superior Court sentenced Petitioner on August 18, 2017. Petitioner did not appeal from that judgment, so his judgment became final on September 18, 2017, when the thirty-day period to appeal expired.[5] Applying the one-year limitations period to that date, Petitioner had until September 18, 2018, to timely file a habeas petition. Petitioner, however, did not file the instant Petition until December 31, 2024, over six years after that deadline. Thus, Petitioner's claims are time-barred and should be dismissed, unless a later deadline applies under

---

[5] In 2017, Delaware Supreme Court Rule 6(a)(iii) provided that a notice of appeal must be filed "[w]ithin 30 days after a sentence is imposed in a direct appeal of a criminal conviction." Del. Supr. Ct. R. 6(a)(iii) (effective June 1, 2015 to July 13, 2025). The thirtieth day fell on Sunday, September 17, 2017 and under Delaware Supreme Court Rule 11(a), the period was extended to the next day the Clerk's office was open.

§ 2244(d)(1)(B) or (D), the limitations period can be statutorily or equitably tolled, or Petitioner makes a gateway showing of actual innocence.

### 2. Section 2244(d)(1)(B)

In his filing styled "Motion for Clarification" (D.I. 15 (docketed July 21, 2025)), Petitioner refers to "current events" involving grievances filed in prison relating to claims of denial of his access to legal resources and legal material going missing in the prison mail system. (D.I. 15 at 2.) Not only are Petitioner's claims conclusory, they appear to be related to incidents allegedly occurring in 2025, after his Petition was filed, and raised to persuade the Court to excuse late filings after his Petition. (D.I. 15 at 2–3.) Even if Petitioner is attempting to suggest some state-created impediment to filing his federal habeas petition, "Petitioner's complaints appear to stem from typical conditions of prison life, which normally do not constitute unconstitutional state-created impediments." *See Hartmann v. May*, No. 20-33-GBW, 2023 WL 2655188, at *8 (D. Del. Mar. 27, 2023). Moreover, any suggestion that Petitioner's prison conditions created an impediment to his ability to pursue legal action is belied by his numerous postconviction filings in state court. *See id.* at *9. These allegations thus do not support the application of § 2244(d)(1)(B).

To the extent Petitioner's references to "*Brady*/Discovery" material are intended to suggest that he was impeded from filing his federal habeas petition due to the protective order limiting his access to materials from his underlying criminal case, that claim also fails to support the application of § 2244(d)(1)(B). Petitioner has not suggested any impropriety in the issuance of the protective order. Petitioner has thus failed to establish a "State action in violation of the Constitution or laws of the United States" as required under subsection (B). 28 U.S.C. § 2244(d)(1)(B).

The record also shows that trial counsel extensively reviewed and discussed case materials with Petitioner prior to his guilty plea. (D.I. 17-1 at 5; D.I. 19-10 at 2; D.I. 19-21 at 4.) During

Petitioner's plea hearing, counsel told the court that he had reviewed and discussed the evidence with Petitioner, including what evidence the State would likely present if the case proceeded to trial. (D.I. 19-21 at 4, 6.)  In his Affidavit filed during Petitioner's first Rule 61 motion, counsel averred that he had discussed "the evidence likely to be present at trial in support of a conviction" with Petitioner, and that "[a]ll pertinent information regarding [Petitioner's] charges was discussed in the entirety with [Petitioner] during our meetings."  (D.I. 19-10 at 2.)  In his Affidavit filed in response to Petitioner's fourth Rule 61 motion, counsel averred to the following:  (1) "transcripts of witness and/or codefendant statements were prepared and shared with all . . . counsel"; (2) "[d]iscovery was provided by the State subject to a protective order"; (3) "[t]he discovery was thoroughly reviewed and discussed both in person and via video with [Petitioner]"; (4) "[c]ounsel believes all witness statements were reviewed and communicated with [Petitioner] in preparation for trial/plea within the confines of the protective order"; (5) "[c]ounsel does recall there being video surveillance but does not recall the clarity or specifics of the video itself"; (6) "[t]here were certainly witnesses who made statements implicating [Petitioner]"; (7) "[c]ounsel believes he discussed the entirety of the facts and evidence provided by the State, in addition to discussing [Petitioner's] comments and concerns, all within the confines of the protective order"; and (8)"[c]ounsel may not have provided specific witness names but believes the content of the witness information was fully disclosed and discussed."[6]  (D.I. 19-18 at 2–3.)

The Delaware Superior Court found counsel credible, concluding that he had reviewed the evidence and discovery with Petitioner.  *See McCoy*, 2020 WL 5821279, at *3; *McCoy*, 2019 WL 3247174, at *6.  Absent clear and convincing evidence to the contrary, AEDPA mandates that state

---

[6] Petitioner also filed a letter in this matter, dated July 22, 2025, from counsel to Petitioner, which further stated that the "plea was entered after extensive discussion and review of your file with you."  (D.I. 17-1 at 5.)

court determinations of factual issues, including credibility, shall be presumed to be correct. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 339-340 (2003) (explaining that trial court is in best position to make credibility determinations and, under AEDPA, trial court factual determinations are presumed correct absent clear and convincing evidence to contrary); *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (stating credibility determinations are presumed correct absent clear and convincing evidence to contrary). Petitioner has not rebutted the finding that counsel reviewed the case materials with him with clear and convincing evidence to the contrary. Therefore, regardless of whether Petitioner had hard copies of his case materials, he was aware of the contents of his file and had the factual basis on which to prepare his federal habeas petition. For these reasons, the Court finds that the protective order and its resulting limitation on Petitioner's access to hard copies of his case file do not warrant the application of 28 U.S.C. § 2244(d)(1)(B). *See Barosh v. Houser*, No. 22-769, 2025 WL 3491562, at *3 (E.D. Pa. Aug. 28, 2025), *report and recommendation adopted,* No. 22-0769, 2025 WL 3281840 (E.D. Pa. Nov. 25, 2025) (finding protective order limiting access to information insufficient to warrant application of 28 U.S.C. § 2244(d)(1)(B)); *Tisdell v. Bickel*, No. 14-1834, 2015 WL 4977184, at *3 (E.D. Pa. Aug. 20, 2015) (collecting cases finding lack of transcripts did not constitute impediment to filing under § 2244(d)(1)(B)).

### 3.    <u>Section 2244(d)(1)(D)</u>

Petitioner asserts that he is raising claims of "new evidence," and that the "Third Circuit ruled that '*Brady* claim[s] in habeas petition[s] [are] timely when filed within one year of the date reason to believe prosecutor violated duty to disclose'" – arguably attempting to trigger the application of § 2244(d)(1)(D). (D.I. 4 at 23.) He fails, however, to identify what new evidence he is referring to or when he discovered it. Further, although Petitioner references § 2244(d)(1)(D) in connection with the denial of his access to "*Brady*/Discovery," he acknowledges that his

10

"*Brady*/Discovery" claim – relating to his limited access to case materials due to the protective order – has been "expressed and denied since 2016." (D.I. 17 at 2; D.I. 21 at 10, 16.) Starting Petitioner's limitations period in 2016 would result in an earlier trigger date than under § 2244(d)(1)(A), and § 2244 directs that the limitations period begins to run on the latest date applicable under subsections (A) through (D).

To the extent Petitioner attempts to rely on witness recantation to trigger the application of § 2244(d)(1)(D) to his prosecutorial misconduct claim for using a false statement, that argument also fails. In his affidavit, the recanting witness states that he lied at the behest of prosecutors when he implicated Petitioner in the Rollins murder. (D.I. 22-1.) Petitioner asserts that the witness first recanted his statement on April 28, 2022. (D.I. 4 at 13) Section 2244(d)(1)(D) only extends the start date of AEDPA's statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D). "Due diligence does not require 'the maximum feasible diligence,' but it does require reasonable diligence in the circumstances." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004). Section 2244(d)(1)(D)'s "due diligence depends on each petitioner's circumstances and the nature of the claim asserted, and it requires that we assess, in light of that context, what a petitioner 'would [have] reasonably expect[ed]' might result from investigative efforts." *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 289 (3d Cir. 2021) (citing *Wilson v. Beard*, 426 F.3d 653, 661 (3d Cir. 2005). The Third Circuit has held that a petitioner is not diligent where the record shows that the defendant or defense counsel was aware of potential exculpatory material but failed to pursue an investigation. *See id.* at 294. Petitioner acknowledges that he was aware of the statement implicating him before pleading guilty (he claims he would not have pleaded guilty if he had known the witness statement was false) and that his counsel was also

11

aware of the statement.  (D.I. 1-1 at 21; D.I. 21 at 12.)  Petitioner also acknowledges that the identity of the witness was disclosed "2 weeks before codefendants trial" – which presumably refers to codefendant John Brisco, whose trial began no later than March 7, 2017 (D.I. 18-1 at 3) and at which this witness testified.  (D.I. 16 at 5; D.I. 21 at 12.)  Although the trial may have started even earlier, two weeks before March 7, 2017, was before Petitioner pleaded guilty.  If Petitioner were in fact innocent, he would have known then that the witness statement implicating him was false.  Yet Petitioner has not revealed any attempt he made to prove that.  To the contrary, he pleaded guilty.  Petitioner has thus failed to establish that § 2244(d)(1)(D) applies.

What's more, Petitioner included the witness recantation evidence in his third Rule 61 motion filed on September 22, 2022.  (D.I. 19-15 at 5.)  Even applying the latest possible date of September 22, 2022, as the date Petitioner became aware of "the factual predicate of the claim" – and thus the start date of AEDPA's limitations period – the deadline to file a Petition would have been September 22, 2023.  Petitioner, however, did not file the instant Petition until December 31, 2024, more than a year after that deadline.

### B.      Statutory Tolling

Under § 2244(d)(2), a properly filed state postconviction motion or other motion for collateral review tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any postconviction appeals, provided the motion was filed and pending before the expiration of AEDPA's limitations period.  *See* 28 U.S.C. § 2244(d)(2); *Swartz v. Meyers*, 204 F.3d 417, 420–24 (3d Cir. 2000); *Smith v. Warden Baylor Womens Corr. Inst.*, No. 21-1880, 2024 WL 808971, at *4–5 (3d Cir. Feb. 27, 2024).  A post-conviction motion is "'properly filed' for statutory tolling purposes when its delivery and acceptance is in compliance with the state's applicable laws and rules governing filings, such as the form of the document, any time limits upon its delivery, the location of the filing, and the requisite filing fee." *Crump v. Phelps*,

572 F. Supp. 2d 480, 483 (D. Del. 2008) (citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). The limitations period is also tolled for the time during which an appeal from a postconviction decision could be filed even if the appeal is not eventually filed. *See Swartz*, 204 F.3d at 424.

Petitioner's first Rule 61 Motion, which the state court found to be untimely, was not filed until October 16, 2018 – *after* his September 18, 2018 deadline to file his federal habeas petition. There is therefore no available statutory tolling that prevents Petitioner's instant claims from being time-barred. *See Pace*, 544 U.S. at 412-14 (holding postconviction petition that is untimely under state law cannot be considered "properly filed" under § 2244(d)(2)); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 86 (3d Cir. 2013) (explaining state court determination that postconviction motion is untimely precludes statutory tolling of AEDPA limitations period regardless of whether state court also addressed merits of claim); *Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004) (finding state postconviction petition had no effect on tolling because its untimeliness deemed it not properly filed and AEDPA limitations period had run when it was filed); *Smith*, 2024 WL 808971, at *4–5 (state postconviction motion filed after AEDPA limitations period has expired does not toll or revive limitations period).

Statutory tolling also does not help Petitioner when, for the sake of argument, applying the later limitations period start date of September 22, 2022 to Petitioner's prosecutorial misconduct claim based on witness recantation. Petitioner's third and fourth Rule 61 motions were both filed within one year from that date. Petitioner's fourth Rule 61 motion was held to be untimely and therefore was not properly filed for statutory tolling purposes. The "Letter/Order" dismissing or denying Petitioner's third Rule 61 motion is not included in the record provided to the Court. The state court docket indicates the motion was dismissed or denied as a second or subsequent

13

postconviction motion.[7] (D.I. 19-1 at 19, Entry No. 101.)  The docket does not indicate whether, as with Petitioner's other three Rule 61 motions, the Delaware Superior Court found his third Rule 61 motion to be time-barred.  Filed even later than his first two Rule 61 motions and having no exceptions to second or subsequent motions available to him, the Court finds that the Delaware courts would find Petitioner's third Rule 61 motion to be untimely, thereby resulting in it being not properly filed for statutory tolling purposes.  *See Jenkins*, 705 F.3d at 85–86 (providing "if a state court fails to rule clearly on the timeliness of an application, a federal court "must . . . determine what the state courts would have held in respect to timeliness") (quoting *Evans v. Chavis,* 546 U.S. 189, 198, (2006)).  In an abundance of caution, the Court notes that even assuming Petitioner's third Rule 61 motion tolled AEDPA's statute of limitations, his Petition would still be untimely.  The third Rule 61 Motion was filed on September 22, 2022, and would have tolled the limitations period until December 5, 2022 – thirty days after the Superior Court's November 4, 2022 dismissal or denial of that motion.[8]  The limitations period would have run

---

[7] In its decisions dismissing Petitioner's third and fourth Rule 61 motions, the Delaware Superior Court held that the newly discovered evidence exception to the second and subsequent bar was not available to Petitioner because he "chose to plead guilty and waived his right to a jury trial." (D.I. 19-3 at 65.)  It is not entirely clear whether dismissal on these grounds would render the petitions not properly filed under § 2244(d)(2).  The Court, however, need not make that determination because the instant Petition is untimely regardless.  *See Lacombe v. Emig*, No. 21-807-GBW, 2024 WL 3328363, at *5 (D. Del. July 8, 2024) (declining to determine same issue where petition was time barred regardless), *certificate of appealability denied sub nom. Lacombe v. Warden James T. Vaughn Corr. Ctr.*, No. 24-2961, 2025 WL 1148298 (3d Cir. Feb. 21, 2025); *see also Bradley v. Cheshire Corr. Inst.*, No. 18-174-LPS, 2020 WL 6684995, at *11 n.3 (D. Del. Nov. 12, 2020) (noting that although other jurisdictions have held state postconviction motion dismissed as successive is not properly filed and does not trigger statutory tolling, the Third Circuit has avoided deciding this issue).

[8] In 2022, Delaware Supreme Court Rule 6(a)(iv) provided that a notice of appeal must be filed "[w]ithin 30 days after entry upon the docket of a judgment or order in any proceeding for post-conviction relief." Del. Supr. Ct. R. 6(a)(iv) (effective June 1, 2015 to July 13, 2025).  The thirtieth day fell on Sunday, December 4, 2022 and, under Delaware Supreme Court Rule 11(a), the period was extended to the next business day.

uninterrupted from December 6, 2022 until it expired on December 6, 2023. The Petition, however, was not filed until December 31, 2024, more than a year after that deadline.

Thus, even after applying any arguably available statutory tolling, Petitioner's claims are time-barred, unless equitable tolling applies or Petitioner establishes a gateway claim of actual innocence.

### C.      Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 272–73 (3d Cir. 2022) (citing *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418)). To satisfy the diligence prong, a petitioner must demonstrate he has been pursuing his rights with reasonable diligence, a fact-specific inquiry that depends on the petitioner's circumstances. *Id.* at 273. The obligation to act diligently pertains not only to the filing of the federal habeas petition, but also while exhausting state court remedies. *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross v. Varano*, 712 F.3d 784, 799–800 (3d Cir. 2013). Additionally, a garden variety of excusable neglect does not warrant equitable tolling. *See Holland*, 560 U.S. at 650–51.

As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). An extraordinary circumstance will warrant equitable tolling only if there is

"a causal connection, or nexus, between the extraordinary circumstances [the petitioner] faced and the petitioner's failure to file a timely federal petition." *See Ross*, 712 F.3d at 803.

As for the timeliness of his Petition, Petitioner asserts "but for counsel's error and the state denying defendant[sic] access to legal material, the defendant's criminal appeal process would've been filed in a timely manner." (D.I. 1 at 13; D.I. 4 at 23.) It is unclear whether Petitioner is referring to his proceedings in state or federal court. To the extent it is referring to his state court proceedings, his assertions about the timing of his direct appeal are irrelevant as to why he did not file his federal habeas corpus petition earlier. Similarly, the arguments Petitioner raises in his Reply regarding the reasons his first Rule 61 motion was untimely are likewise immaterial. (D.I. 21 at 15-16.)

To the extent Petitioner relies on his claim that his trial counsel told Petitioner that "he would" file a direct appeal (D.I. 4 at 9; D.I. 21 at 15), that claim is insufficient to warrant equitable tolling. *Compare Schlueter*, 384 F.3d 69 (holding equitable tolling not warranted based on attorney's representation that he would, as opposed to misrepresenting that he did, file state motion for postconviction relief), *with Ross*, 712 F.3d 784 (holding equitable tolling warranted where petitioner was misled to believe attorney was actively pursuing appeal). Petitioner acknowledges that he knew that his trial counsel had not filed a direct appeal sometime before filing his first Rule 61 motion on October 16, 2018. (D.I. 4 at 9, 23.) Petitioner nevertheless did not file his federal habeas petition until over five years later. Even if trial counsel's failure to file a direct appeal constituted an extraordinary circumstance, the Court does not find a nexus between trial counsel's conduct in 2017 and Petitioner's failure to file his Petition during a period of over five years after he became aware that no direct appeal had been filed. *See Wallace*, 2 F.4th at 148 (holding petitioner has burden "to establish that extraordinary circumstances prevented him from

16

filing a habeas petition for the entirety of the period for which he has sought tolling" (emphasis added)); *Ross*, 712 F.3d at 803 (providing that "for a petitioner to obtain relief there must be a causal connection, or nexus, between the extraordinary circumstances [the petitioner] faced and the petitioner's failure to file a timely federal petition").

Throughout his filings, Petitioner alleges that the State and counsel have denied him access to his legal materials. (D.I. 1 at 5; D.I. 1-1 at 18–19, 20; D.I. 14; D.I. 17 at 2–3; D.I. 21 at 4, 5, 10–11, 13.) The root of this claim arises from the issuance of a protective order that limited Petitioner's access to case materials. Lack of legal documents does not, on its own, warrant equitable tolling. *See Downes v. Carroll*, 348 F. Supp. 2d 296, 303 (D. Del. 2004); *see also Kammerdeiner v. Superintendent Albion SCI*, 841 F. App'x 416, 420 (3d Cir. 2021) (finding petitioner could not persuasively argue inability to procure case file hindered his ability to file petition where he ultimately filed state and federal postconviction motions without case documents). Further, although egregious attorney misconduct may give rise to equitable tolling, *see Holland*, 560 U.S. at 651-52, any claim that Petitioner's attorney committed misconduct by not providing Petitioner with his case file when he was prohibited from doing so by a protective order rings hollow. The same is true for any denial by the State to provide these materials to Petitioner.

Furthermore, although the protective order prohibited counsel from permitting Petitioner to access his case materials, it permitted counsel to discuss the content of those materials with Petitioner. (D.I. 19-5.) As discussed above, counsel thoroughly reviewed Petitioner's case file, including evidence and discovery, with Petitioner prior to his plea. *See* Section II.A.2. Therefore, even though his physical access to case materials was limited, Petitioner was aware of the content

17

of those materials.  Accordingly, the Court does not find a nexus between the limitation on Petitioner's physical access to case materials and Petitioner's failure to file his Petition.

Petitioner repeatedly details various ways he claims counsel was ineffective before, during, and after his plea process.  (D.I. 21 at 4–17.)  Generally, in a non-capital case, attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation.  *See Schlueter*, 384 F.3d at 76.  Only egregious attorney error constitutes an extraordinary circumstance for purposes of equitable tolling.  *See id.* 76-77; *Lacombe v. Emig*, No. 21-807-GBW, 2024 WL 3328363, at *6 (D. Del. July 8, 2024).  The Court does not find any of the alleged conduct to be egregious.  Even assuming it was, Petitioner has failed to demonstrate a nexus between his attorney's conduct and his failure to file his Petition.

The remaining factors alleged by Petitioner that arguably assert a claim for equitable tolling include limited access to the law library and legal resources, age,[9] lack of education and legal knowledge, and legal materials being lost in the prison mail system.  These claims are also insufficient to warrant equitable tolling.  *See Martin*, 23 F.4th at 273 (declaring "lack of legal knowledge or legal training does not alone justify equitable tolling"); *Hall v. Emig*, C,A. No. 20-1291 (MN), 2023 WL 5135866, at *4 (D. Del. Aug. 10, 2023) (providing limited access to law library and legal materials is routine aspect of prison life, not extraordinary circumstance warranting equitable tolling), *certificate of appealability denied sub nom. Hall v. Delaware*, No. 23-2596, 2024 WL 823260 (3d Cir. Feb. 9, 2024); *Evans v. Carroll*, C.A. No. 03-947-SLR, 2005 WL 196554, at *4 (D. Del. Jan. 19, 2005) (finding fact that petitioner was nineteen when convicted does not demonstrate how some external factor prevented him from pursuing his claims or from timely filing federal habeas application); *see also Gonzalez v. United States, 918 F. Supp. 2d 287*,

---

[9] Petitioner he indicates he was seventeen years old when charged.  (D.I. 17 at 2.)

18

290 (D. Del. 2013) (citing *Garrick v. Vaughn*, 2003 WL 22331774, at *4 (E.D. Pa. Sept. 5, 2003) (for principle that "[r]outine aspects of prison life such as lockdowns, lack of access to legal resources, and disturbances . . . do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations"). Furthermore, Petitioner's pro se filings in both state and federal court demonstrate his competency in pursuing his legal rights regardless of the factors identified.

The Court notes that Petitioner did demonstrate some diligence in pursuing relief in state court. That diligence, however, is insufficient to excuse Petitioner from waiting for over seven years after his conviction became final and almost six years after his AEDPA limitations period lapsed to file the instant Petition. Petitioner's failure to at least file a protective habeas petition at some point demonstrates a lack of diligence. *See Wallace*, 2 F.4th at 149-50 (holding petitioner's failure to file protective federal habeas petition during pendency of his state postconviction proceeding, as described by the Supreme Court in Pace, 544 U.S. at 416–17, undermined his diligence claim).

For these reasons, Petitioner has failed to establish that he pursued his rights with reasonable diligence or demonstrate the existence of an extraordinary circumstance that prevented him from timely filing his Petition. Thus, the Court concludes that the doctrine of equitable tolling is unavailable to Petitioner on the facts he has presented.

### D.    Actual Innocence

Finally, a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *Wallace*, 2 F.4th at 150–151. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To satisfy this extraordinary exception, "a petitioner must (1) present new, reliable evidence of his

innocence; and (2) show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him (*i.e.,* a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence." *Wallace*, 2 F.4th at 151. An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [ ] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "The standard does not require absolute certainty of guilt or innocence, but it is demanding and will be satisfied only in rare and extraordinary cases where the evidence of innocence is so strong that it undermines confidence in the trial's outcome." *Id.* Where there is sufficiently strong competing evidence undermining an innocence claim, a defendant is not entitled to "pass through the 'actual innocence' gateway." *Id.* at 159.

Petitioner's actual innocence claim is based on the following grounds: (1) the ballistics and forensic evidence do not support the State's theory of how one of the murders occurred; (2) despite the State claiming Petitioner was developed as a suspect through surveillance footage, there was no such footage; (3) a witness that implicated Petitioner in the Rollins murder recanted his statement; and (4) the State's ballistic expert, Carl Rone, was arrested for fraudulent activity.[10]

The first problem with Petitioner's actual innocence claim is that he pleaded guilty to the offenses of which he now says he is actually innocent. When, as here, the petitioner pleaded guilty, courts in the Third Circuit have held that the petitioner cannot later make a showing of actual innocence. *See, e.g.,* E*vick v. Caple,* No. 18-395-RGA, 2021 WL 534877, at *7 (D. Del. Feb. 12,

---

[10] In his Reply, Petitioner references being on probation and bring tracked by a GPS monitor, presumably at the time of the crimes to which he pleaded guilty. (D.I. 21 at 19-20.) It is unclear whether Petitioner raises this issue solely in connection to his IAC claim for failure to investigate or if he also intended it to support his actual innocence claim. To the extent it was intended to support his claim of actual innocence, Petitioner has not provided any information on how it supports that claim.

2021); *Hamilton v. Estock*, 2020 WL 7391270, at *4 (M.D. Pa. Dec. 16, 2020); *Madison v. McGinley*, 2019 WL 2591296, at *4 (E.D. Pa. May 3, 2019) (collecting cases). It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Delaware Superior Court held that Petitioner knowingly and voluntarily consented to the plea agreement. AEDPA mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption of correctness is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Taylor v. Horn*, 504 F.3d 416, 433 (3d Cir. 2007). Petitioner has not rebutted the finding that he knowingly and voluntarily consented to the plea agreement with clear and convincing evidence to the contrary.

Second, Petitioner has failed to establish that all of this evidence is new. As thoroughly discussed above, although the protective order prohibited counsel from permitting Petitioner to access his case materials, counsel extensively reviewed and discussed the contents of the case materials with Petitioner. *See* Section II.A.2. Petitioner even acknowledges that he was aware of the statement implicating him before pleading guilty (he claims he would not have pleaded guilty if he had known the witness statement was false) and that his counsel was also aware of the statement. (D.I. 1-1 at 21; D.I. 21 at 12.) Petitioner also acknowledges that the identity of the witness was disclosed before pleading guilty. (D.I. 16 at 5; D.I. 21 at 12.) Although the witness recantation occurred after Petitioner's plea, Petitioner was nonetheless aware of the statement and, if Petitioner had not been complicit in the murder, he would have known the statement was false at that time.

21

Third, although Carl Rone's misconduct and convictions might be considered new, it is not evidence of Petitioner's factual innocence. Rone's misconduct did not involve the mishandling or falsification of ballistics evidence in Petitioner's case. At most, Rone's misconduct and related convictions amount to impeachment evidence, which "will seldom, if ever" demonstrate actual innocence by clear and convincing evidence. *See Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). In sum, Rone's misconduct and criminal convictions are not reliable evidence of Petitioner's actual innocence under the demanding standard of *McQuiggin* and *Schlup*. *See Romeo v. May*, No. 20-721 (MN), 2023 WL 4265610, at *4 (D. Del. June 29, 2023) (holding same).

Fourth, even if the grounds on which Petitioner bases his claim were new, they are insufficient to demonstrate actual innocence. Petitioner's first two grounds amount to no more than a challenge to the sufficiency of the evidence and as stated above, actual innocence means factual innocence, not legal insufficiency. Nor can Petitioner accurately claim to know what the State's theory of the case would have been since the State did not present its case because Petitioner pleaded guilty. Further, the witness recantation does not exonerate Petitioner or show that a person other than Petitioner committed the Rollins homicide. Additionally, Petitioner has not presented anything to refute the evidence that he was found in possession of one gun that ballistically matched the bullets used in the Rollins murders and another gun, although not ballistically matched, but of the same type of additional bullets used in that murder. Nor has Petitioner provided any evidence to demonstrate actual innocence of the robbery he was caught in the act of committing. Finally, the Court reiterates that Petitioner admitted that he committed these crimes when he pleaded guilty. Therefore, even if the evidence presented were new, Petitioner has not shown by a preponderance of the evidence that it is more likely than not that no reasonable juror

22

would have convicted him (*i.e.,* a reasonable juror would have reasonable doubt about his guilt) in light of the new evidence.

The actual innocence exception is inapplicable here. Petitioner's arguments do not meet the demanding standard required to satisfy this extraordinary exception.

## III.     FREESTANDING CLAIM OF ACTUAL INNOCENCE

To the extent that Petitioner has asserted a freestanding claim of actual innocence, the United States Supreme Court has not recognized the existence of such a claim, and, at the very least, Petitioner must satisfy the "gateway" standard, which Petitioner has failed to do. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993) (stating that movant's burden on any such claim "would necessarily be extraordinarily high"); *Marcy v. Superintendent Phoenix SCI*, 110 F.4th 210, 219 n.20 (3d Cir. 2024) (recognizing that United States Supreme Court has not recognized actual innocence as freestanding, cognizable claim but that it would entail and extraordinarily high burden of proof); *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (describing hypothetical freestanding actual-innocence claim as "more demanding" than that applied to gateway actual-innocence claims).

## IV.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded the Petition is time-barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

23

V.    **CONCLUSION**

For the reasons discussed above, the Court dismisses the Petition without an evidentiary hearing and without issuing a certificate of appealability.  The Court will issue an Order consistent with this Memorandum Opinion.